UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ROBERT PERRY,

                              Plaintiff,                             **REPORT AND**
                                                               **RECOMMENDATION**
    -against-

                                                                               17-CV-6107 (ENV)

FURMAN'S LAB LLC and ENMANUEL DE
JESUS,

                              Defendants.
----------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

       Plaintiff Robert Perry ("plaintiff") brings this action for minimum wage and overtime payments owing pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 206(a), 207(a)(1), and the New York Labor Law (the "NYLL"), NYLL §§ 652(1)(a)(ii), 170 (McKinney 2014), for unpaid spread-of-hours pay under the NYLL, 12 NYCRR § 146-1.6, civil damages for recordkeeping violations pursuant to the New York Wage Theft Prevention Act (the "WTPA"), NYLL § 195, and common law conversion of earned tips. See Complaint ("Compl.") (Oct. 19, 2017) ¶¶ 1-2, Electronic Case Filing ("ECF") Document Entry ("DE") #1. On October 19, 2017, plaintiff filed this suit against Furman's Lab LLC ("Furman's Lab") and Enmanuel De Jesus ("De Jesus") (together, "defendants"). See id. at 1. Having failed to answer or otherwise defend this case, defendants defaulted, as noted by the Clerk of the Court on January 11, 2018. See Clerk's Entry of Default (Jan. 11, 2018), DE #13. Plaintiff subsequently moved for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure. See Motion for Default Judgment (Jan 17, 2018) ("Pl. Mot."), DE #14; see also Memorandum in Support (Jan. 17, 2018) ("Pl. Mem."), DE #16. On March 27, 2018,

1

the Honorable Eric N. Vitaliano entered default judgment with respect to liability and referred plaintiff's motion to the undersigned magistrate judge for a report and recommendation with respect to damages. See Order Referring Motion (Mar. 27, 2018).

For the reasons set forth below, this Court respectfully recommends that plaintiff's motion be granted in substantial part. Although plaintiff's testimony at the inquest hearing raised a question as to whether plaintiff was defendants' "employee" within the meaning of the FLSA and NYLL, this Court nevertheless concludes that plaintiff has plausibly alleged that he was an employee. This Court further recommends that the District Court award plaintiff $31,031.78 in damages, fees and costs.

## THE UNDERLYING FACTS

As noted above, plaintiff claims various labor violations under both federal and New York law. See generally Compl. Plaintiff alleges in his Complaint that he was employed at defendants' coffee shop as a barista for two months. See Compl. ¶¶ 12, 15. Over the course of those two months, plaintiff worked approximately 750 hours. See id. ¶ 19. Plaintiff never received any wages for his hours worked, and he received some, but not all, tips earned. See id. ¶¶ 15, 20-37.

At inquest, plaintiff's testimony shed further light on his work situation at Furman's Lab. Plaintiff testified that before joining defendants, he had been working for another coffee shop. See Transcript (Aug. 17, 2018) ("Tr.") at 7:13-23, DE #26. While working at the other coffee shop, he was approached by a customer, defendant De Jesus, who proposed to plaintiff that they start a coffee shop business together. See id. at 7:15 – 8:4. Although this would be, for each of them, the "first time venturing into a business[,]" id. at 11:10-11, the

two agreed to enter into a partnership relationship, see id. at 7:24 to 8:4. Plaintiff agreed to take a 40 percent interest in the coffee shop, and De Jesus agreed to take a 60 percent interest. See id. at 5:6-10, 8:20-24. In exchange for an interest in the business, plaintiff would contribute his labor and skill as a barista, as well as his knowledge of operating a coffee shop, see id. at 13:13-18, and De Jesus would contribute his financial resources, cf. id. at 13:19-25 (De Jesus only occasionally helped in the day-to-day aspects of the business); id. at 18:3-4 (noting that plaintiff did not contribute any capital to the business). Their partnership agreement was never reduced to writing. See id. at 8:25 to 9:1.

Plaintiff began work at Furman's Lab on June 19, 2017, the day that the business first opened. See id. at 4:6-7, 11:20-21. He worked approximately 87.5 hours per week at Furman's Lab, see id. at 5:16-22, 6:2-3, where he fulfilled customers' orders, cleaned the coffee shop, placed orders for products and other business supplies, and otherwise directed the day-to-day operations of the business, see id. at 13:13-18. During his tenure at Furman's Lab, plaintiff would, seven days per week, arrive at Furman's Lab at 6:15 a.m. to open the coffee shop and would work straight, with no breaks, until 6:45 p.m., when he closed the coffee shop. See id. at 5:21-22, 12:21 to 13:4. Plaintiff testified that he had no supervisors and that, aside from De Jesus, no one else worked for Furman's Lab. See id. at 8:15-19, 13:5-7. Although De Jesus' role in the business was apparently limited to financial operations, De Jesus helped him to some limited extent in the day-to-day operations. See id. at 13:19-23.

On August 17, 2017, after two months of plaintiff's receiving no compensation other than cash tips and a check for one month of credit card tips, see id. at 6:4-9, 6:15-16, 12:5-13, plaintiff and De Jesus had an argument, see id. at 5:11-15, 6:20 to 7:4, 9:15 to 10:24, 11:22 to

3

12:13. Plaintiff accused De Jesus of withholding his 40 percent interest in the venture. De Jesus claimed that he had done all of the work at Furman's Lab and denied having agreed to share any interest in the business with plaintiff. That day, plaintiff left Furman's Lab and never returned. See id. at 9:17 to 10:24.

## LIABILITY UNDER THE FLSA

Plaintiff's testimony at the hearing, which was highly credible, at first blush seemed to implicate a failed partnership arrangement rather than an employment relationship. Because these facts, which the pleading neither alleged nor alluded to, appeared to undercut the premise of plaintiff's only federal claims,[1] this Court directed plaintiff to submit supplemental argument why, despite plaintiff's testimony, he could be held to have stated plausible federal wage-and-hour claims, as opposed to state law claims for breach of contract. See id. at 18:15-21, 19:11-22.

In his supplemental submission, plaintiff notes that the partnership agreement was not reduced to writing and that, even though he may have been a partner for contract purposes, he was an employee for FLSA purposes.[2] See generally Letter. Characterizing De Jesus' promise of an ownership interest "a farce[,]" id. at 2, and applying a flexible "economic reality" test to his work situation at Furman's Lab, plaintiff persuasively argues that "[t]he economic reality of [defendants' and plaintiff's] relationship was that of an employer-employee

---

[1] As plaintiff and defendant Furman's Lab are citizens of New York, see Compl. ¶¶ 6-8, the Court's subject matter jurisdiction is based solely on the minimum wage and overtime FLSA claims, see id. ¶¶ 3-4.

[2] At the inquest, counsel argued that the purported partnership arrangement "was fictitious[,]" see Tr. at 17:25 to 18:2, and that a breach of contract claim would have failed because the partnership agreement was not memorialized in writing, see id. at 18:3-9. The Court need not decide whether New York's statute of frauds would have rendered any partnership agreement unenforceable.

4

and nothing more, despite what was told orally to [p]laintiff by [De Jesus,]" id. at 3 (citing Godoy v. Rest. Opportunity Ctr. of N.Y. Inc., 615 F.Supp.2d 186, 192-95 (S.D.N.Y. 2009)).

This Court concludes that plaintiff has sufficiently pled that he was defendants' employee within the meaning of the FLSA (and NYLL). "The mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee" for statutory purposes. Clackamas Gastroenterology Assocs., P.C., 538 U.S. 440, 450 (2003); see EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1539 (2d Cir. 1996) (concluding that corporate defendant's "directors [were] also 'employees' for purposes of the ADEA"). Depending on the nature of the "particular factual challenges presented by individual cases[,]" courts have looked to "different sets of factors" to determine whether, under the FLSA, plaintiffs were employees of the defendants. Godoy, 615 F.Supp.2d at 192 n.3; see also id. at 192 (noting that a five-part test has been applied "to distinguish employees from independent contractors"). Whatever particular form the so-called "economic reality test" may take in a specific context, "employment under FLSA is a 'flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" Id. at 192 (quoting Barfield v. N.Y.C. Health & Hosp. Corp., 537 F.3d 132, 141-142 (2d Cir. 2008)).

The court in Godoy followed a totality-of-the-circumstances approach in addressing the distinction between a partner and an employee for purposes of the FLSA. See id. at 192-95. Citing the Tenth Circuit's opinion in Wheeler v. Hurdman, 825 F.2d 257 (10th Cir. 1987), the Godoy court, in ruling on the defendants' motion to dismiss the plaintiffs' FLSA claims, took into account a series of factors, such as whether there was profit sharing and an

5

assumption of risk, any contribution of capital, and the shared ownership of assets, as well as the right to control the management of the business.  See Godoy, 615 F.Supp.2d at 192-95.  In Godoy, in contrast to the present case, the parties' agreement that plaintiffs would be co-owners in a cooperative restaurant was "repeated many times orally and in writing[,]" id. at 195, as well as in a written (but apparently not fully executed) contract prepared by the defendants, see id at 189.  In addition, the plaintiffs in Godoy were members of the Board of Directors of the business' Cooperative Committee, "tasked with the management of the restaurant's planning and development phase."  Id.  Taking into account these "economic realities," the Godoy court concluded that the plaintiffs were "putative co-owners of the business they were working to create," as they had "assumed the risks of loss and liabilities of the venture, and had a real opportunity to share in its profits upon success."  Id. (internal quotation marks and alteration omitted).

      Here, in contrast, defendants have neither challenged the facts alleged in the complaint (which characterizes the parties' relationship as that of employer and employee), nor argued that the testimony elicited at the inquest hearing negates the allegations in the pleading. Whether defendants could have successfully defended against a FLSA claim is not the appropriate inquiry in the current posture of the case.  The District Court has already concluded that the pleading adequately states claims under the FLSA and NYLL, see Order Referring Motion, and the record developed at the hearing does not warrant modifying that determination.  De Jesus controlled the financial aspects of the business and, having secured the benefit of plaintiff's round-the-clock labor, De Jesus never gave plaintiff *any* of the proceeds of Furman's Lab (apart from a portion of the tips), let alone a 40 percent share.

6

Indeed, when plaintiff finally confronted De Jesus after 59 days of largely uncompensated work, De Jesus denied that there ever was an understanding that plaintiff would co-own the business. Considering the totality of the circumstances, there is more than a "mere possibility" that De Jesus never intended to enter into a partnership relationship. See generally Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The definition of "employee" embodied in the FLSA, see 29 U.S.C. § 203(g), "is necessarily a broad one in accordance with the remedial purposes of the Act." Brock v. Superior Care Inc., 840 F.2d 1054, 1058 (2d Cir. 1988). On this unopposed motion for default judgment, it is more than plausible that, despite their oral agreement to the contrary, in reality, plaintiff was defendants' employee for purposes of the FLSA and NYLL. See Kehler v. Albert Anderson, Inc., Civil Action No. 16-5318 (JBS/KMW), 2017 WL 1399628, at *5-7 (D.N.J. Apr. 18, 2017) (distinguishing Godoy and holding, on a Rule 12(b)(6) motion to dismiss, that, under the totality of the circumstances, the plaintiff, who thought he was a minority shareholder in the defendants' close corporation, was an employee for FLSA purposes).

Therefore, it is the recommendation of this Court that the default judgment on liability not be disturbed.[3]

---

[3] As the District Court already entered default judgment on liability with respect to both defendants, this Court need not address plaintiff's argument regarding De Jesus' individual liability. See Pl. Mem. at 12-13.

**RELIEF**

I.   **Default Judgment Standard: Damages**

Although, in deciding motions for default judgment, courts assume the truth of the pleadings' well-pled facts as they relate to liability, see Order Referring Motion (collecting cases), the facts alleged in the pleading are not assumed to be true in assessing a plaintiff's right to the relief requested, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). In other words, even if a defendant is found to be liable, the defendant's default is not considered an admission of the plaintiff's entitlement to an award of damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Instead, the relief requested must "be established by the plaintiff" with evidence, id. at 158, and may not exceed "what is specified in the [complaint's] 'demand for judgment,'" Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007).

II.  **Minimum Wage and Overtime Pay**

In light of defendants' liability for minimum wage and overtime violations under both federal and New York law, see Order Referring Motion; Compl. ¶¶ 38-63, plaintiff has elected the minimum wage rate and overtime pay provided by the NYLL, see Pl. Mem. at 7-8.[4] Hours worked up to forty per week are compensable at the minimum wage rate, and hours worked in excess thereof are compensable at the overtime rate. See NYLL § 170; 12 NYCRR § 146-1.4;[5] 29 U.S.C. § 207(a)(2)(C). For the calendar year 2017, the minimum wage rate

---

[4] A plaintiff who prevails on minimum wage claims under both the FLSA and NYLL is entitled to recover "whichever minimum wage – state or federal - was the highest at any given period of their employment." De Jesus v. Sea Crest Diner-Restaurant, 17-CV-275 (ADS) (SIL), 2018 WL 3742778, at *8 (E.D.N.Y. May 7, 2018) (collecting cases; internal quotation marks omitted).

[5] In plaintiff's Complaint and motion papers, plaintiff cites to Part 142 of Title 12 of the New York

under New York law for New York City employers with ten or fewer employees was $10.50 per hour. See 12 NYCRR § 146-1.2(a)(1)(i)(b).[6] The overtime rate under New York law is one-and-one-half times the otherwise applicable hourly rate. See id. § 146-1.4; see also 29 U.S.C. § 207(a)(2)(C).

Here, plaintiff worked at Furman's Lab from June 19, 2017 to August 17, 2017, see Tr. at 4:6-7, 6:15-16, and only two people worked at Furman's Lab: plaintiff and De Jesus, see id. at 13:5-7. Thus, the applicable minimum wage rate is $10.50 per hour, and the applicable overtime rate is $15.75 per hour (one-and-one-half times the otherwise applicable hourly rate of $10.50).

From Monday, June 19, 2017 to Sunday, August 13, 2017 (a period of eight weeks), plaintiff worked 87.5 hours per week. See Tr. at 4:6-7, 5:21-22, 6:15-16. Of those hours, 40 hours per week (totaling 320 hours over eight weeks) are compensable at the straight minimum wage rate. The remaining 47.5 hours per week (totaling 380 hours over eight weeks) are compensable at the overtime rate.

From Monday, August 14, 2017 to Thursday, August 17, 2017 (a period of less than one week), plaintiff worked 50 hours. See id. at 4:6-7, 5:21-22, 6:15-16. Of those hours, 40

---

Compilation of Codes, Rules and Regulations, see, e.g., Compl. ¶¶ 47, 60, 66, which covers all employees, except those "who are covered by minimum wage standards in any other minimum wage order[,]" 12 NYCRR § 142-1.1. However, plaintiff was employed by a coffee shop, and employment in the "hospitality industry," which "includes any eating or drinking place that prepares and offers food or beverage for human consumption[,]" id. § 146-3.1(a)-(b), is covered under Part 146.

[6] Under certain circumstances, both the FLSA and NYLL permit an employer to pay a tipped worker at an hourly wage rate less than the statutory minimum wage; to be eligible for such a "tip credit," the employer must first give the employee proper notice of its intention to include tip income in calculating the wages paid to the employee. See Zheng v. Nanatori Japanese Rest. Corp., 15CV1222 (RJD)(RML), 2017 WL 758489, at *5 (E.D.N.Y. Jan. 9, 2017). As the record here is barren of proof of any such notice, defendants are not entitled to the benefit of the tip credit.

hours are compensable at the straight minimum wage rate, and the remaining 10 hours are compensable at the overtime rate.

Thus, collectively, plaintiff worked 360 minimum wage hours (320 hours under the first period plus 40 hours under the second) and 390 overtime hours (380 hours under the first period plus 10 hours under the second). Plaintiff is therefore entitled to **$3,780** for unpaid minimum wages ($10.50 per hour multiplied by 360 hours) and **$6,142.50** for unpaid overtime ($15.75 per hour times 390 hours).

### III. Spread-of-Hours Pay

In light of defendants' liability for spread-of-hours violations under New York law, see Order Referring Motion; Compl. ¶¶ 64-68, plaintiff also seeks the spread-of-hours pay provided by the NYLL, see Pl. Mem. at 8-9. "Spread of hours compensation is calculated by multiplying the [applicable] minimum wage by the number of days an employee worked more than ten hours." Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777(JGK)(JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012); see Vasquez v. Ranieri Cheese Corp., No. 07-CV-464-ENV-VVP, 2010 WL 1223606, at *17 (E.D.N.Y. Mar. 26, 2010). As noted above, the applicable minimum wage rate here is $10.50 per hour. Further, plaintiff worked 12.5 hours per day for 59 days. See Tr. at 4:6-7, 5:21-22, 6:15-16 (testifying that plaintiff worked from 6:15 a.m. to 6:45 p.m. with no breaks, seven days per week, from June 19, 2017 to August 17, 2017). Accordingly, plaintiff is entitled to **$619.50** in spread-of-hours pay ($10.50 per day multiplied by 59 days).

10

**IV.     Damages for Wage Theft Prevention Act**

The District Court has found defendants liable for failing to provide plaintiff with the notice required by the WTPA, containing information about his rates of pay.  See Order Referring Motion; Compl. ¶¶ 69-71.  Plaintiff therefore seeks statutory damages under the NYLL, see Pl. Mem. at 9-10, which provides for statutory damages of $50 per day while the violation is pending, with a maximum limit of $5,000, see NYLL § 198(1-b).  Here, plaintiff worked 59 days while the NYLL notice violations were pending.  See Tr. at 4:6-7, 6:15-16.  Thus, plaintiff is entitled to **$2,950** in statutory damages for defendants' notice violations ($50 per day multiplied by times 59 days).

**V.     Liquidated Damages**

In light of defendants' liability for minimum wage and overtime violations under both federal and New York law, see Order Referring Motion; Compl. ¶¶ 38-63, plaintiff seeks liquidated damages provided by the FLSA and NYLL, see Pl. Mem. at 10-12.  Under the FLSA, in addition to collecting unpaid wages and overtime pay, a plaintiff may collect liquidated damages amounting to 100 percent of his unpaid wages.  See 29 U.S.C. § 216(b).  The court may, in its discretion, reduce liquidated damages, but only if the defendant proves that its employment practices were undertaken in good faith.  See id. § 260.  Because defendants have failed to appear—and have thus failed to prove their good faith—plaintiff is entitled to **$9,922.50** in liquidated damages ($3,780 in unpaid minimum wages plus $6,142.50 in overtime pay).

11

**VI.    Tips**

In light of defendants' liability for common law conversion of plaintiff's tips, see Order Referring Motion; Compl. ¶¶ 72-75, plaintiff requests an award of $700 worth of credit card tips withheld by defendants, see Pl. Mem. at 13-14.  Specifically, plaintiff earned, but was not paid, "between $400 and $700" in tips after the first month of business.  See Tr. at 7:2-4; see also id. at 12:5-13 (plaintiff received a check in the amount of $500-$600 for credit card tips earned during the first month of business).  As defendants have not come forward to contest the precise amount of those withheld tips, this Court recommends that plaintiff be awarded **$700**, his requested amount, in unpaid tips.  See Pl. Mem at 14.

**VII.    Attorney's Fees and Costs**

In light of defendants' liability for minimum wage and overtime violations under federal law, see Order Referring Motion; Compl. ¶¶ 38-42, 51-56, plaintiff seeks attorney's fees and costs under the FLSA, see Pl. Mem. at 14-15, which provides that a prevailing plaintiff may collect his or her reasonable attorney's fees and costs.  See 29 U.S.C. § 216(b).

   A. Attorney's Fees

      1. *Governing Law*

Plaintiff bears the burden of proving the reasonableness of the fees sought.  See Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999).  In considering an application for attorney's fees, the Court must first determine the presumptively reasonable fee.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).  This presumptively reasonable fee—or lodestar[7]—is essentially "'what a

---

[7] The lodestar is the product of the number of hours reasonably expended on the litigation and a

reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quoting Arbor Hill, 493 F.3d at 112, 118).

Courts can and should exercise broad discretion in determining a reasonable fee award. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion"). The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. See Arbor Hill, 522 F.3d at 186 n.3, 190. In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." See Simmons, 575 F.3d at 174-75 (recounting history of the forum rule); see also Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983). The Court must review these

---

reasonable hourly rate. See Arbor Hill, 522 F.3d at 183.

13

time records and the hours an attorney billed in order to determine the reasonableness of such and, in doing so, should examine the value of the work product and "exclude excessive, redundant or otherwise unnecessary hours." Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319 (ARR)(VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999)), adopted, 2010 WL 2539661 (E.D.N.Y. June 17, 2010); see Hensley, 461 U.S. at 434; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994).

2. *Application*

Plaintiff requests a total award of $10,344.15 for his attorney's fees. See Pl. Mem. at 15. Specifically, plaintiff requests an hourly rate of $450 for Casey Wolnowski's services. See Pl. Mem. at 15. Mr. Wolnowski graduated law school in 2008, but has worked in employment law only since 2014. See Roberts v. UPS, 13-CV-6161 (JBW) (JO), 2016 WL 1425766, at *4 (E.D.N.Y. Mar. 16, 2016), adopted, 2016 WL 1441318 (E.D.N.Y. Apr. 8, 2016); Drice v. My Merch. Servs., LLC, CV 2015-0395 (MKB)(MDG), 2016 WL 1266866, at *9 (E.D.N.Y. Mar. 4, 2016). Although plaintiff cites a Southern District of New York case where the court awarded Mr. Wolnowski $450 per hour, the rates in this District are "substantially lower." See Simmons, 575 F.3d at 172. Indeed, in this District, Mr. Wolnowski has been awarded $250 per hour in wage-and-hour cases. See Drice, 2016 WL 1266866, at *9; but see Roberts, 2016 WL 1425766, at *11 (awarding Mr. Wolnowski $350 per hour in a discrimination case). As this was a relatively simple wage-and-hour case brought by a single plaintiff, a rate of $275 per hour is more consistent with the rates approved in this District for counsel with experience similar to Mr. Wolnowski's. See, e.g., Gonzalez-Diaz v.

Daddyo's Mgmt. Grp. Inc., 16 CV 1907 (ENV)(RML), 2017 WL 7625319, at *5-6 & nn.10-11 (E.D.N.Y. Nov. 7, 2017), adopted, Order Adopting Report and Recommendations (Dec. 12, 2017). Accordingly, this Court concludes that a reasonable hourly rate for the work performed by Mr. Wolnowski in this employment case is $275 per hour.

Plaintiff claims that Mr. Wolnowski spent a total of 22.987 hours working on this case. See Pl. Mem. at 15. This Court has reviewed counsel's contemporaneous records, see Exhibit 7 (Jan. 17, 2018), DE #15-7, which accompany plaintiff's attorney's declaration affirming that such records are accurate and that the work was actually incurred, see Declaration (Jan. 17, 2018) ("Wolnowski Decl.") ¶¶ 14-15, DE #15, and finds them to be reasonable.

Accordingly, this Court recommends an award of **$6,321.42** in attorney's fees ($275 per hour multiplied by 22.987 hours).

    B. Costs

Plaintiff also requests an award of $595.86 in costs. See Pl. Mem. at 15. These costs include $400 for the court filing fee, $40 for service upon the Secretary of State, $21.86 in Federal Express fees paid for mailing a copy of the Complaint and claim letter, and $134 for the process servers' fees. See Exhibit 8 (Jan. 17, 2018) ("Costs Invoice"), DE #15-8; Wolnowski Decl. ¶ 16. In addition to his attorney invoice, see Costs Invoice, plaintiff submitted a sworn statement from his counsel, Mr. Wolnowski, affirming that these costs are correct and were actually incurred, see Wolnowski Decl. ¶ 16. Courts in this District have awarded such costs in labor cases. See e.g., Gonzalez-Diaz, 2017 WL 7625319, at *6. Accordingly, this Court recommends that plaintiff be awarded the **$595.86** in costs.

**CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that plaintiff's motion for default judgment be granted in substantial part. Despite the factual development at inquest, this Court recommends that the default judgment with respect to liability should not be disturbed. The Court also recommends that the Court enter judgment against the two defendants, jointly and severally, awarding plaintiff a total of **$31,031.78:** $3,780 for unpaid minimum wages, $6,142.50 for unpaid overtime, $619.50 in spread-of-hours pay, $2,950 in statutory damages for notice violations, $9,922.50 in liquidated damages, $700 in unpaid tips, $6,321.42 in attorney's fees, and $595.86 in costs.

Any objections to this Report and Recommendation must be filed with the Honorable Eric N. Vitaliano on or before **September 17, 2018**. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72.

The Clerk is respectfully requested to docket this Report and Recommendation into the ECF court file. Plaintiff is directed to promptly serve a hard copy on defendants, and to file proof of service.

**SO ORDERED.**

**Dated: Brooklyn, New York**
      **August 31, 2018**

      /s/ *Roanne L. Mann*
      **ROANNE L. MANN**
      **CHIEF UNITED STATES MAGISTRATE JUDGE**